**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR MURILLO, | No. CIV S-07-1144-WBS-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| R.J. SUBIA, et al., | |
| Respondents. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the 2006 denial of parole decision. Pending before the court are: Petitioner's petition for writ of habeas corpus (Doc. 1), Respondent's response to the petition (Doc. 8), Petitioner's traverse (Doc. 9), Respondent's supplemental brief (Doc. 11), and Petitioner's supplemental brief (Doc. 12).[1]

///

---

[1] The supplemental briefs were filed pursuant to the court's request that each party file a brief discussing the effect, if any, the original Ninth Circuit panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), would have on this case. The panel decision in Hayward was thereafter vacated, and the case was heard en banc. Therefore, the relevant case, as discussed below is the en banc opinion, 603 F.3d 546 (9th Cir. 2010).

1

# I. BACKGROUND

Petitioner is serving an indeterminate life sentence for a conviction of second-degree murder. Petitioner appeared at his first subsequent parole suitability hearing in April 2006, at which time he was represented by counsel. In denying parole, the Board of Prison Terms ("Board") stated:

> The panel has reviewed all the information received and relied on the following circumstances in concluding you are not yet suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison. The offense was carried out in a cruel and callous manner.. . . . You indicate that you are not a violent person but you have a prior history of using a knife, of carrying a knife. Your prior history includes adult convictions and to me what they look like are things that would more care [sic] on a juvenile record but you were still doing as an adult, bicycle theft, the menacing it was a felony, menacing with a knife and you were placed on probation. You were given an opportunity, you knew what probation was all about. Regardless of the fact that you did complete that probation satisfactorily you were carrying a knife at that time, you came back and you started carrying a knife again. So to me you didn't learn anything from that experience. So to speak that was some sort of society's previous attempts to rehabilitate you but you kept going on. Also in terms of prior criminality and your social history you indicated that you were a meth dealer for three years. You did it to sustain your own addictions and you basically used crank and weed and LSD and some cocaine and alcohol during the course of your time. You participated in street gang association whether you were a member or an associate, in my book you walk like a you know what and talk like a you know what. . . . When you got into prison you went and joined a gang or you're an associate of a gang. Allegedly you dropped out of that, you indicated that that was for protection. Every time that we questioned you today your answer was it was for protection, your gang association or why you carried a knife or what ever the case may be. Also even though you had gotten you know you said that you weren't going to participate in the gang activity anymore, you got your tattoo which was an original gang tattoo upgraded after you had gotten out of the gang thing Also while you were in prison you received a 128A for grooming issues and that was after you had been told by I guess your previous panel no more 115's, no more 128's. I do want to indicate that you have done a good job and you should be applauded your efforts while you were in custody. Commissioner Smith mentioned a variety of programs that you have been involved in. Laudatory chronos, you've been participating in Criminals and Gangs Anonymous Program in Narcotics Anonymous and the 12 Step Recovery Program. . . . Workshops,

>you participated in a Victim's Workshop, a Parenting Workshop and you completed vocational electronics program. You are moving in the right direction but for us I think we would like to see you distance yourself from the disciplinary action. Your programming and your admission of your guilt so to speak, taking a look at yourself as a criminal. Some of the things that the Deputy District Attorney mentioned are fairly recent in your current history.

Petitioner challenged the decision with a petition for writ of habeas corpus filed in the Santa Clara County Superior Court. In denying relief, the court stated:

>Pursuant to *In re Dannenberg* (2005) 34 Cal.4th 1061 parole can be denied if any one of several broadly interpreted, and extremely deferentially reviewed, unsuitability factors are present. In this case Petitioner's extensive criminal history and gang membership/activities weigh against parole. Petitioner does need to "distance" himself from his past history of continuous misconduct. The habeas petition is DENIED.

The California Court of Appeals and California Supreme Court both summarily denied relief.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See <u>id.</u> at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See <u>id.</u> In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See <u>id.</u> at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See <u>Benn v. Lambert</u>, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See <u>id.</u> If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See <u>id.</u>

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in <u>Williams</u>, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See <u>Williams</u>, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See <u>id.</u> at 410; see also <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

5

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

### III. DISCUSSION

Petitioner argues that the Board's decision was not supported by some evidence of his current dangerousness. Specifically, he argues there is no evidence in the record to support the Board's decision, the Board failed to consider his relevant suitability factors, and instead relied on unchanging circumstances. Respondent argues that Petitioner does not have a federally protected liberty interest in parole, and that even if the "some evidence" standard applies, the factors cited by the Board and state court meet this standard.

In Hayward v. Marshall, the Ninth Circuit sitting en banc held that there is no federal stand-alone substantive due process right to parole. See 603 F.3d 546, 555 (9th Cir. 2010) (en banc). Any substantive due process interest in parole arises solely from state law creating the right. See id. The Ninth Circuit overruled its prior decisions in Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), and Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release . . . ." Hayward, 603 F.3d at 555.

Turning to whether California's parole scheme creates any substantive due process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion." Id. at 561. The court then discussed California law, including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008),

6

and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that "as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Id. at 562. The court then provided the following instructions for resolving parole claims in the context of AEDPA:

> Since the "some evidence" requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide whether the California judicial decision approving the . . . decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."

Id.

The en banc court concluded that Hayward had properly been denied parole because the nature of the commitment offense combined with an unfavorable psychological evaluation provided "some evidence" under California law of future dangerousness. See id.

Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v. Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause." 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). The court observed that "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." Id.

As has been clearly stated by the Ninth Circuit, California law provides the contours of the substantive due process right to parole at issue in this case. Under California law, one year prior to an inmate's minimum eligible parole release date, the Board will set a date for an eligibility hearing. See Cal. Penal Code § 3041(a). A release date shall be set unless release currently poses an unreasonable risk of danger to society. See Cal. Penal Code § 3041(b). The paramount concern in determining parole suitability in California is public safety. See In re Dannenberg, 34 Cal.4th 1061 (2005). This requires an assessment of the inmate's current

dangerousness. See In re Lawrence, 44 Cal.4th at 1205. Such an assessment requires more than "rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision – the determination of current dangerousness." Id. at 1210.

California regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d). The regulations are designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. In re Lawrence, 44 Cal.4th at 1202. There must be a rational nexus between the facts cited by the Board and the ultimate conclusion on dangerousness. See id. at 1227.

Regarding reliance on the facts of the commitment offense, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th at 1071. While the Board cannot require an inmate to admit guilt in order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

1  § 2236, the Board must consider the inmate's past and present attitude toward the crime and any
2  lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code
3  Regs., tit. 15, §§ 2402(b), 2402(d)(3). "Lack of insight" is probative of unsuitability only to the
4  extent that it is both demonstrably shown by the record and rationally indicative of the inmate's
5  current dangerousness.  See In re Calderon, 184 Cal. App. 4th 670, 690 (2010).

6         In light of the precedents outlined above the court concludes that petitioner has a
7  protected liberty interest in parole arising from state law.  The court also concludes that the
8  contours of the substantive guarantee required to protect that liberty interest are defined by state
9  law and that under California law parole may not be denied unless there is "some evidence" of
10 the inmate's dangerousness at the time of the parole eligibility hearing.  Respondent's arguments
11 to the contrary are rejected.

12        Applying the "some evidence" standard to the facts of this case, the court finds
13 that the state court's decision was neither an unreasonable application of that test nor based on an
14 unreasonable determination of the facts.  As set forth above, the Santa Clara County Superior
15 Court denied Petitioner's habeas petition based on his extensive criminal history as well as his
16 gang membership and activities.  In addition, a review of the Board's decision shows support for
17 the parole denial beyond the circumstances of the commitment offense.  While the commitment
18 offense certainly is a major focus for the Board, there is also a finding that Petitioner's pre- and
19 post-commitment behavior did not support a decision granting parole.  The Board specifically
20 discussed Petitioner's drug use and dealing, his prior probation and his prior gang activity, as well
21 as his gang activity while incarcerated, including his membership therein and his tattooing after
22 disassociation, and his minor disciplinary for grooming after he had been counseled by the prior
23 Board not to receive any disciplinary actions, serious or administrative.  In addition, contrary to
24 Petitioner's contention, the Board did consider Petitioner's suitability factors and even
25 commended Petitioner for his relatively disciplinary free incarceration, his programming, self-
26 help programs, and educational upgrades.  However, the Board found these positive aspects were

outweighed not only by the circumstances surrounding the crime, but also by Petitioner pre- and post- commitment behavior.  Thus, the Boards decision is certainly supported by some evidence.

### IV.  CONCLUSION

The undersigned finds that state court's decision is neither contrary to nor an unreasonable application of clearly established United States Supreme Court law.

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 29, 2010

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE